STATE of Alaska, Appellant,

v.

DISTRICT COURT, Appellee.

No. A–6915.

Court of Appeals of Alaska.

July 17, 1998.

---

Eric A. Johnson, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellant.

Joseph W. Evans, Birch, Horton, Bittner & Cherot, for Appellee.

Before COATS, C.J., and MANNHEIMER and STEWART, JJ.

## OPINION

STEWART, Judge.

As defined in AS 11.41.330(a), the offense of custodial interference is committed when any relative of a child "takes, entices, or keeps that child ... from a lawful custodian," if the relative knows that they have no legal right to do this and if the relative's intent is to hold the child for a protracted period. Under AS 11.41.320(a), the offense becomes custodial interference in the first degree—a class C felony—if a person "violates AS 11.41.330 and causes the victim to be removed from the state."

This appeal presents the following question: To prove the offense of first-degree custodial interference, must the government prove that the removal of the child from Alaska occurred *after* the defendant committed the act of custodial interference? Or does a person commit the offense of first-degree custodial interference if they remove the child from Alaska (or otherwise cause the child to be removed from Alaska) *and then* violate AS 11.41.330 by unlawfully taking, enticing, or keeping the child from a lawful custodian? For the reasons explained here, we hold that a person commits first-degree custodial interference regardless of whether the child's removal from Alaska occurs before or after the person takes unlawful control of the child.

This case arose when the Fairbanks District Attorney's office attempted to file a charge of first-degree custodial interference against Roberta K. Renshaw. Ms. Renshaw, a California resident, was formerly married to Alan Renshaw, who now lives in Healy.

At the time of their divorce, Alan was awarded custody of the couple's son, B.R., and Roberta was given visitation rights.

In July 1997, B.R. traveled to California for scheduled visitation with his mother. The visitation was to end on August 8th. However, Roberta Renshaw did not return B.R. to Alaska at the end of the visitation. Instead, she quit her job, abandoned her residence, and fled with B.R. to an unknown destination. Her whereabouts—and the whereabouts of her son B.R.—are currently unknown.

In February 1998, based on these facts, the state tried to file a felony complaint against Renshaw, charging her with first-degree custodial interference. However, Magistrate William R. Smith refused to accept the complaint. Because B.R. had gone to California in connection with Renshaw's scheduled period of visitation, and because Renshaw's alleged act of custodial interference occurred after B.R. arrived in California, the magistrate ruled that the state had failed to prove first-degree custodial interference. He therefore refused to accept the felony complaint for filing, and he refused to issue a warrant for Renshaw's arrest.[1]

As noted above, AS 11.41.320(a) declares that the offense of first-degree custodial interference is committed when a person "violates AS 11.41.330 and causes the victim to be removed from the state." Magistrate Smith interpreted this statute to mean that the offense is committed only when a person violates AS 11.41.330 and *thereafter* causes the victim to be illegally removed from Alaska.

Nothing in the language of the statute supports this interpretation. The statute does not specify that the elements of the offense must be committed in a particular temporal sequence, nor does the statute specify that the removal of the victim from Alaska must occur illegally.

In *Strother v. State*,[2] we noted that one of the chief purposes of Alaska's civil and crimi-

---

1. The magistrate indicated that he was willing to allow the state to file an amended complaint charging second-degree custodial interference, a misdemeanor.

2. 891 P.2d 214, 219 (Alaska App.1995).

nal statutes governing child custody is to deter abductions and other unilateral removals of children by relatives seeking to obtain custody or to circumvent custody decrees. We also agreed with the Oregon Court of Appeals that "[t]he emotional and financial costs suffered by [a parent] in trying to locate [an abducted child] are among the primary evils that the [custodial interference] statute was intended to deter." [3]

These legislative concerns are heightened whenever the abducting parent conceals (or even openly keeps) a child in another state. The fact that the child is in another jurisdiction increases the difficulty and expense of locating the child, and it also increases the legal difficulty of returning the child to his or her proper custodian.

From the perspective of the parent or guardian who is unlawfully deprived of custody, and given the legislative goals underlying the custodial interference statutes, it does not matter whether the offending person failed to return the child at the end of visitation and then removed the child from Alaska, or whether the offending relative exercised visitation in another state and then absconded with the child or otherwise refused to return the child. In either situation, the result is the same: the innocent custodian is deprived of the child, and the efforts of the state and the custodian to regain custody of the child are hampered by the fact that the child is in another jurisdiction.

We therefore conclude that the two elements of first-degree custodial interference need not be committed in any particular temporal sequence. The offense is proved if the state establishes that the offending relative (1) committed custodial interference as defined in AS 11.41.330(a), and (2) caused the child to be removed from Alaska. Although the state must prove that both of these elements existed at the time of the offense, it is irrelevant whether the defendant committed custodial interference and then caused the child to be removed from Alaska, or vice-versa.

We REVERSE the magistrate's decision not to accept the criminal complaint charging Renshaw with first-degree custodial interference. The district court is directed to accept the complaint for filing and to issue process upon that complaint.

---

3. *State v. West,* 70 Or.App. 167, 688 P.2d 406, 408 (1984) (footnote omitted), *quoted in Strother,* 891 P.2d at 221–22.